IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Gordon P. Gallagher, United States Magistrate Judge

Civil Case No. 21-cv-1812-CMA-GPG

ROKE VELASCO,

    Plaintiff,

v.

JASON'S PREMIER PUMPING SERVICE, LLC,

    Defendant.

**RECOMMENDATION THAT JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT BE GRANTED**

    This matter comes before the Court on the following motion: joint motion for approval of FLSA settlement (D. 53)[1] (which was referred to this Magistrate Judge (D. 54))[2]. The Court has reviewed the motion (D. 53), the show cause response (D. 56), the unredacted proposed agreement (D. 61), as well as the remaining pertinent sections of the case file.

    The parties request that the Court approve their settlement agreement, which resolves all of Plaintiff's claims brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and all other claims. The settlement agreement states that Plaintiff will dismiss the case

---

[1] "(D. 53)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

with prejudice pending the execution of the settlement agreement (D. 61). For the following reasons, I respectfully recommend that the settlement agreement (D. 61) be approved.:

Plaintiff alleges that he and others were improperly classified as independent contractors rather than employees. (D. 58, p. 1). As a result, Plaintiff claims that required overtime was not paid. *Id*. Plaintiff performed manual labor tasks associated with maintaining oil and gas wells. (D. 1, p. 5, para. 21). Defendant Jason's Premier Pumping is an oil and gas company which provides service to wells in Colorado. *Id.*, p. 4, para. 19. The Court notes that despite conditional certification and notice to eligible class members, no others chose to join the class and the relevant deadlines have passed. (D. 53, p. 2).

When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Requiring court approval of FLSA settlements effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To approve the settlement agreement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Lynn's Food Stores*, 679 F.2d at 1354.

I. ***BONA FIDE* DISPUTE**

Parties requesting approval of an FLSA settlement must provide the Court with sufficient information to determine whether a bona fide dispute exists. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010). To meet this obligation, the parties must present: (1) a description

2

of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Collins v. Sanderson Farms, Inc.,* 568 F. Supp. 2d 714, 718 (E.D. La. 2008). The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id*. at 719-20.

The Parties assert that a *bona fide* dispute exists in this circumstance. The Parties believe that there are significant factual disputes as to whether Plaintiff was an employee of Jason's Premier or whether Plaintiff was an independent contractor instead providing services to another organization named Ursa. (D. 58, p. 2). The Parties state that there are disputes as to whether Plaintiff "worked independently," was required to work exclusively for either Jason's Premier or Ursa, "tracked his own time," "negotiated his own rates," received any training or supervision, had any requirement to submit paperwork to Jason's Premier, could subcontract any of his work, used his own equipment, worked at Jason's Premier or Ursa, and worked with or without supervision. *Id*. Further, a prior audit by the Colorado Unemployment Division apparently made a determination that certain subcontractors were not employees and that, as a result, Jason's Premier avoided unemployment benefits liability for those individuals in that circumstance. *Id*. The Parties also assert that there is a real dispute as to willfulness, implicating the statute of limitations. *Id*. p. 3. Based on the record made by the Parties, this Court finds that a *bona fide* dispute exists in this circumstance.

II. **FAIR AND REASONABLE**

3

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA policy rationales. Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement. *See, e.g.*, *Dail v. George A. Arab Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (evaluating individual action); *Collins*, 568 F. Supp. 2d at 721 (evaluating collective action). The Tenth Circuit considers the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(e): (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

> Under the terms of the settlement agreement, Defendant will pay a
>
> total gross amount of [$X], which includes full compensation of alleged unpaid overtime wages, liquidated damages, and attorneys' fees and costs. Of that Gross Settlement Amount, (1) [approximately 31% of $X] is apportioned to Plaintiff Velasco as unpaid wages, for which Defendant will issue a W-2 and will withhold applicable payroll taxes, (2) [an equal amount] is apportioned as liquidated damages and interest, for which Plaintiff Velasco will be responsible for paying any income taxes, and (3) [approximately 36% of $X] is apportioned as attorneys' fees and costs to be made payable directly to Plaintiff's counsel.

(D. 61, p. 2).

According to the parties, as a result of this settlement, the Plaintiff will receive more than he would have received had the claimed overtime been paid at the time Plaintiff claims it was due but less than the full amount Plaintiff could have recovered if he was entirely successful on every aspect of his claims. Although Defendant disputes the factual basis of Plaintiff's claims, the parties represent that the complexity of issues, expense of litigation, and the likely duration of the

4

litigation make the settlement a fair one.  Moreover, Plaintiff and Defendant are represented by experienced counsel who each believe that the settlement is fair and reasonable.  Based on the foregoing, the Court finds that the evidence suggests that the parties fairly and honestly negotiated the settlement.

Next, the Court must determine whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power. To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) presence of other similarly situated employees; (2) a likelihood that plaintiffs' circumstances will recur; and (3) whether defendants had a history of non-compliance with the FLSA. *Dees*, 706 F. Supp. 2d at 1244. The record shows that no other similarly situated employees have sought to join this action.  And the settlement does not impact the rights of any other similarly situated individuals—if there are any.  (D. 58, p. 5).  In addition, there is no evidence that Defendant's alleged failure to comply with the FLSA represents a continuing violation or is part of widespread conduct. *Id*. Jason's Premier is no longer in the industry in the fashion that occurred in this case, has not been since August 31, 2020, and "does not intend to revive its business in the oil and gas industry."  (D. 58, pp. 5-6).

### III. ATTORNEYS' FEES

The parties represent that the attorney fee provision of the settlement is reasonable (D. 58, p. 3).  However, the Court must independently examine whether the award of attorney fees and costs is reasonable. *See Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) (unpublished) (holding that contingency contract between counsel and plaintiff did not abrogate court's duty to review the reasonableness of legal fees in an FLSA settlement). To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount," which represents the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983); *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587-88 (Colo. App. 2000). The lodestar amount may be adjusted based upon several factors, including the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, the value of the legal services to the client, awards in similar cases, and the degree of success achieved. *See Tallitsch v. Child Support Servs., Inc*., 926 P.2d 143, 147 (Colo. App. 1996). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

Plaintiff's Counsel submitted a detailed affidavit and an hourly billing invoice (D. 58-1). Counsel also states that the fee agreement permitted an attorney's fee of up to 40% of any recovery, and the fee requested is slightly below that amount at about 36%. (D. 53, p. 5). The various rates for each Counsel and their relevant experience are set forth in detail in Mr. Hogg's declaration. (D. 58-1). A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr*., 163 F.3d 1186, 1203 (10th Cir. 1998). In order to satisfy its burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). *Olivares v. UFP Lafayette, LLC*, No. 12-cv-01082-CMA-KLM, 2013 WL 2477124, at *1 (D. Colo. June 10, 2013) (approving $280 hourly rate for lead counsel and $200 hourly rate for associate attorney in FLSA case); *Horne v. Scott's Concrete Contractor, LLC*, No. 12-cv-01445-

WYD-KLM, 2013 WL 3713905, at *10 (D. Colo. April 24, 2013) (finding $250 and $200 reasonable hourly rates for attorneys in FLSA case).

Plaintiff's counsel also provided the Court, for purposes of the lodestar determination, with an hourly billing invoice which would result in a total fee of $33,142.50, with the bulk of the work being performed by an attorney billing at the rate of $350 per hour. Based on my review of the invoice and rates previously approved in this District, the Court finds the lodestar amount to be reasonable here.

The next issue the Court must examine is whether the requested fee amount (which the Court notes is a fraction of the $33,000 that Plaintiff's counsel actually billed), should be ordered for attorney fees and costs. Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684-85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute). Based on the contingency fee agreement with Plaintiff and based on the undersigned's twenty-five years of combined private and judicial experience and careful consideration of Counsel's affidavit and the issues underlying this matter, the Court finds that amount requested in attorney fees and costs are reasonable here.

IV. **CONCLUSION**

Thus, after reviewing the Motion and proposed Settlement Agreement, the Court finds that the litigation involves a bona fide dispute, that the proposed Settlement Agreement is fair and equitable to all parties concerned, and that the proposed settlement awards reasonable attorney fees

7

and costs. The Court therefore respectfully **recommends** that the parties' Joint Motion For Approval Of Settlement (D. 53) be granted.

    Dated at Grand Junction, Colorado, this January 11, 2023.

    _____
    Gordon P. Gallagher
    United States Magistrate Judge